IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01668-DDD-SBP

COMMITTEE OF FIVE, INC. d/b/a XX-XY ATHLETICS,

Plaintiff,

v.

AUBREY C. SULLIVAN, et al.,

Defendants.

## MOTION FOR LIMITED EXPEDITED AND JURISDICTIONAL DISCOVERY

Defendants Aubrey Sullivan, Sergio Cordova, Geta Asfaw, Mayuko Fieweger, Daniel S. Ward, Jade R. Kelly, and Eric Artis, in their official capacities (the "CCRD and Commission Defendants"), by and through undersigned counsel, hereby respectfully move under Federal Rule of Civil Procedure 26(d)(1) for leave to take: (1) jurisdictional discovery to respond to the Complaint (ECF 1), and (2) limited, expedited discovery regarding Plaintiff's Motion for Preliminary Injunction ("PI Motion") (ECF 15).

### D.C. COLO.LCivR 7.1 Certificate of Conferral

Counsel for the parties conferred by videophone and through e-mail concerning the discovery requested by CCRD and Commission Defendants for purposes of jurisdiction and responding to the PI Motion, as well as an extension to Defendants' response to the Complaint and PI Motion. CCRD and Commission Defendants initially outlined that they sought to serve two interrogatories and two requests for production, and a short Rule 30(b)(6) deposition of Plaintiff. In response, Plaintiff offered to respond to three interrogatories directed to its pop-up retail events and social media posts. After

1

CCRD and Commission Defendants asked Plaintiff to clarify the scope of its claims–i.e., whether the speech at issue was its interactions with customers or all statements made in a variety of forms–Plaintiff stated that "CADA regulates XX-XY's publications and advertisements in addition to its interactions with customers, prospective customers, and members of the public" and asserted that its proposal was sufficient. Given the scope of Plaintiff's claims and many forms of speech in multiple forums, CCRD and Commission Defendants concluded that Plaintiff's proposal was insufficient to allow full development of Plaintiff's standing and their likelihood of success on the merits, and therefore propose 5 written requests and a short 30(b)(6) deposition of Plaintiff.

Defendant the Attorney General takes no position on this discovery motion, as he intends to assert a sovereign immunity defense in his response to the Complaint. However, he reserves the right to participate in any granted discovery to the extent he remains a party in the case.

## INTRODUCTION

Plaintiff asserts that recent amendments to the definition of gender expression under Parts 6 and 7 of the Colorado Anti-Discrimination Act ("CADA"), which prohibits certain discriminatory acts in places of public accommodation, are unconstitutional under the First and Fourteenth Amendments. Courts generally allow jurisdictional discovery, where, as here, the existing record is insufficient, and the party seeking discovery has a good faith belief that it will uncover facts necessary to ascertain the court's jurisdiction over the case. There is also good cause to grant expedited discovery to inform CCRD and Commission Defendants' response to the PI Motion, which raises

2

important factual questions that require resolution before the Court can fully consider Plaintiff's request for extraordinary preliminary relief.

This is the second of two related cases: both this and the earlier-filed *Defending Education et al. v. Aubrey C. Sullivan et al.*, No. 1:25-cv-01572-RMR-KAS, name the same Defendants and have common facts and claims asserting First and Fourteenth Amendment violations based on CADA's public accommodation provisions. *See* ECF 22. Both also raise similar questions of jurisdiction and standing, and have pending Motions for Preliminary Injunctions for which Commission and CCRD Defendants assert discovery is needed. In *Defending Education*, Magistrate Judge Starnella set a hearing on CCRD and Commission Defendants' Motion for Discovery for August 6, 2025, and Judge Rodriguez granted Defendants' motion for extension of time for Defendants to respond to the amended complaint and preliminary injunction motion "up through and including three weeks after the completion of any limited discovery period as ordered by Magistrate Judge Starnella." *See* No. 1:25-cv-01572-RMR-KAS (ECF 38).

Just as in *Defending Education*, here CCRD and Commission Defendants seek leave to conduct limited expedited discovery as to key jurisdictional issues and fact questions raised by the PI Motion for which there is an insufficient record, including: (1) whether Plaintiff qualifies as a "place of public accommodation" when engaging in each of the activities it alleges are chilled by CADA; (2) whether Plaintiff intends to engage in conduct that would arguably violate the law and/or has engaged in the type of speech affected by CADA; and (3) whether Plaintiff's intended conduct is likely to subject it to a charge of discrimination and thus whether any asserted injury is imminent or instead purely speculative. These key issues are central to this Court's jurisdiction and standing,

and discovery will allow CCRD and Commission Defendants to present these arguments fulsomely in a motion to dismiss and opposition to the PI Motion.

## BACKGROUND

Plaintiff is an online, athletic-apparel retailer that also hosts pop-up shops at various events in Colorado. Compl. ¶¶ 32-38. Plaintiff communicates with members of the public, customers, and potential customers at pop-up events, through speaking events and public engagements, and virtually through online advertising, email, social media, and online review boards. *Id.* ¶¶ 42-44. Plaintiff's brand messaging "focuses almost exclusively on protecting women's sports from the unfair inclusion of biologically male athletes," *id.* ¶ 48, and Plaintiff "frequently" deadnames and misgenders transgender athletes. *Id.* ¶¶ 68-69, 72-86. Although it offers no examples, Plaintiff asserts that it would follow this misgendering and deadnaming policy when referring to customers and other members of the public. *Id.* ¶¶ 92-102. At the same time, however, Plaintiff "will gladly sell its products to anyone." *Id.* ¶ 102.

Plaintiff asserts that CADA and House Bill 25-1312 arguably preclude Plaintiff, a public accommodation, from referring "to transgender-identifying individuals with their given names or with biologically accurate language," including in its "advertising, customer interactions, and elsewhere." *Id.* ¶ 5. Plaintiff asserts that CADA's provisions on public accommodations and definitions of "gender expression" and "chosen name" are facially overbroad and/or vague and violate the First and Fourteenth Amendments.

Plaintiff does not allege that it has been the subject of any complaint filed with CCRD. Rather, Plaintiff raises facial and as-applied challenges to portions of Parts 6 and 7 of CADA, both of which prohibit certain discriminatory acts with respect to places

4

of public accommodation. Colo. Rev. Stat. §§ 24-34-601(2)(a), 24-34-701; *see also* Colo. Rev. Stat. § 24-34-300.7.

Under Part 6, a place of public accommodation is (a) "any place of business engaged in any sales to the public" or (b) "any place offering services, facilities, privileges, advantages, or accommodations to the public." Nonexclusive examples include, for example and relevant here, "any business offering wholesale or retail sales to the public"; and "any public building, park, arena, theater, hall, auditorium, museum, library, exhibit, or public facility of any kind whether indoor or outdoor." *Id.* § 24-34-601(1). Part 7 defines public accommodation by reference to federal disability discrimination law. *See id.* § 24-34-703 (cross-referencing § 24-34-301); *id.* § 24-34-301(16) (providing that "public accommodation" has the same meaning as in Title III of the Americans with Disabilities Act ("ADA")). In turn, the ADA provides that private entities qualify as "public accommodations" if they fall within one of twelve enumerated categories and their operations affect commerce. *See* 42 U.S.C. § 12181(7). Those categories include places of lodging; auditoriums, convention centers, or other places of public gathering; and other service establishments. *Id.*

Under CADA and as relevant here, under Part 6 it is an unlawful discriminatory practice for a public accommodation, because of an individual's protected status (1) "directly or indirectly, to refuse, withhold from, or deny to an individual or a group . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation," Colo. Rev. Stat. § 24-34-601(2)(a); (2) "directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates that

5

the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual," *id.*, or (3) circulate communications that indicate "that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable." *Id.* Part 7 prohibits, among other things, public accommodations from publishing or displaying materials that discriminate against any person on account of their protected status. Colo. Rev. Stat. § 24-34-701(1).

"Gender identity," "gender expression," and "sexual orientation" are all protected characteristics under CADA. *See, e.g.*, Colo. Rev. Stat. § 24-34-601. "Sexual orientation" was added as a protected class in 2008 and was defined at the time to include "transgender status." *See* 2008 Colo. Legis. Serv. Ch. 341 (S.B. 08–200). In 2009, CCRD promulgated a rule clarifying that unlawful harassment based on sexual orientation can, depending on the circumstances, include "[d]eliberately misusing an individual's preferred name, form of address, or gender-related pronoun." 3 CCR 708-1, Rule 81.6(A)(4). "Gender expression" and "gender identity" were added as distinct protected classes in 2021. *See* 2021 Colo. Legis. Serv. Ch. 156 (H.B. 21-1108). Most recently, HB 25-1312 amended the definition of "gender expression" to mimic the existing rule to expressly include an individual's "chosen name, and how the individual chooses to be addressed," thereby effectively codifying Rule 81.6. *See* H.B. 25-1312 § 8, *codified at* Colo. Rev. Stat. § 24-34-301(3.5), (9).

## LEGAL STANDARDS

A party is generally entitled to discovery on factual issues raised by a motion to dismiss for lack of jurisdiction. *See Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d

6

1320, 1326 (10th Cir. 2002). A court abuses its discretion in denying jurisdictional discovery "if the denial results in prejudice to a litigant," which occurs when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (quotation marks and alteration omitted). "The burden of demonstrating a legal entitlement to jurisdictional discovery . . . is on the party seeking the discovery." *Breakthrough Mngm't Grp. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010).

The Court may also exercise its discretion to grant expedited discovery in advance of a Rule 26(f) conference where a party is seeking a preliminary injunction, so long as the party seeking discovery shows good cause. *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.,* 213 F.R.D. 418, 419 (D. Colo. 2003) (citations omitted); *see also* Fed. R. Civ. P. 26 Adv. Comm. Notes (1993 amendments to subdivision (d)) (expedited discovery is appropriate "in some cases, such as those involving requests for a preliminary injunction"); *Metal Bldg. Components, L.P. v. Caperton,* No. CIV-04-0256 MV/DJS, 2004 WL 7337726, at *3 (D.N.M. Apr. 2, 2004) (same). Courts in the Tenth Circuit have repeatedly found "good cause" exists for expedited discovery in such cases. *See Advantage Sales & Mktg. LLC v. Gold*, No. 18-CV-00312-RM, 2018 WL 6252781, at *1 (D. Colo. Feb. 13, 2018); *Icon Health & Fitness, Inc. v. Johnson Health Tech N.Am., Inc.,* No. 10-CV-00209, 2011 WL 13136539, at *3 (D. Utah Mar. 1, 2011); *Metal Bldg. Components, L.P.,* 2004 WL 7337726 at *3.

In assessing whether "good cause" exists, courts consider the reasonableness of the request, including:

(1) whether a preliminary injunction is pending;
(2) the breadth of the discovery requests;

7

    (3) the purpose for requesting the expedited discovery;
    (4) the burden on the defendants to comply with the requests; and
    (5) how far in advance of the typical discovery process the request was made.

*Denver Homeless Out Loud v. Denver,* No. 20-CV-2985-WJM-SKC, 2020 WL 6585795, at *2 (D. Colo. Nov. 10, 2020) (quotations and citations omitted). "[G]ood cause may be found where the . . . need for expedited discovery outweighs the possible prejudice or hardship to the [responding party]." *Metal Bldg. Components, L.P.,* 2004 WL 7337726, at *4.

## ARGUMENT

CCRD and Commission Defendants are entitled to limited, expedited discovery both to address the open questions of Plaintiff's standing and ripeness for purposes of a Rule 12(b)(1) Motion, and to respond to Plaintiff's PI Motion.

**I.    CCRD and Commission Defendants are entitled to jurisdictional discovery to determine Plaintiff's standing and ripeness.**

Plaintiff asserts that H.B. 25-1312 subjects it to a threat of enforcement proceedings under CADA because Plaintiff advocates that women's athletics should exclude transgender individuals, and in doing so, it deadnames and misgenders transgender athletes in advertising, social media, and speaking engagements, and that it intends to do similarly with customers and members of the public. To establish standing, Plaintiff must show (1) an injury in fact, (2) a causal connection between the injury and the alleged conduct, and (3) redressability.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quotations and citation omitted). For the first element, Plaintiff must show either that (1)(a) it intends to "engage in conduct that would ... arguably violate the law" and (b) such conduct would "give rise to a credible fear of an enforcement action," or (2)(a) Plaintiff has in the past engaged in the type of speech or

8

conduct regulated by CADA, (b) Plaintiff has a present desire to engage in such speech or conduct, and (c)) Plaintiff has no intention to presently engage in such speech or conduct because of a credible threat of enforcement. Colo. Union of Taxpayers, Inc. v. Griswold, No. 22-1122, 2023 WL 5426581, at *1 (10th Cir. Aug. 23, 2023); Peck v. McCann, 43 F.4th 1116, 1129-31 (10th Cir. 2022). Plaintiff's allegations do not definitively establish these elements, and instead raise serious questions about whether Plaintiff has standing to assert its claims.

First, Plaintiff does not merely operate as a retailer that sells clothing but also more generally advocates that sports participation should be divided by biological sex. It is thus unclear whether Plaintiff is operating as a "place of public accommodation" and subject to Parts 6 and 7 of CADA when it engages in much of the speech described in its Complaint. It is also unclear precisely which of Plaintiff's speech activities it believes to be at issue: for example, Plaintiff offers no explanation whether and under what circumstances its general statements in support of women's sports or misgendering and deadnaming transgender athletes arguably violates CADA. *See* Compl. ¶¶ 51, 72-78.

Second, it is unclear whether Plaintiff's pop-up shops qualify as places of public accommodation, as they do not have a set location and the Complaint does not address whether or how they are open to the public. Relevant to this inquiry is the nature of the relationship between the organization and a place of public accommodation, as well as the specific antidiscrimination law at issue. *See, e.g.*, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 677 (2001) (golf association was covered by Title III of the ADA, which applies to persons that lease or operate places of public accommodation, when conducting events on golf courses that were places of public accommodation); *Clegg v. Cult Awareness*

9

*Network*, 18 F.3d 752, 756 (9th Cir. 1994) (rejecting claim under Title II of the Civil Rights Act of 1964 where the defendant organization's activities did not "depend upon or emanate from any particular facility or location" and defendant was not "closely connected with a place of public accommodation") (quotation marks omitted). To evaluate whether or how Plaintiff's pop-ups are in fact "public," CCRD and Commission Defendants need discovery regarding the contours and scope of these events.

Third, the Complaint and PI Motion raise questions about whether any of Plaintiff's interactions with the public are likely to subject it to a charge of discrimination and thus whether any asserted injury is imminent or instead purely speculative. Plaintiff asserts that it deadnames athletes in advertising and speaking engagements, and that it would not knowingly use the chosen name or proper pronouns for a transgender individual. But Plaintiff does not identify any instance in which it refused to use the chosen name or pronouns of a customer or prospective customer—nor how such circumstances might even arise through its online retail business. Nor does it identify any complaints made against it to date, even though transgender status has long been a protected class under CADA and the CCRD Rule has been in effect since 2009. Highlighting the importance of resolving these open questions are Plaintiff's assertions that it "will gladly sell its products to anyone." Compl. ¶ 102. Further factual development is needed to determine the likelihood that Plaintiff's actions could result in a charge that they are unlawfully discriminating against individuals in places of public accommodation, as well as whether the State may disavow enforcement as to certain of Plaintiff's activities (to the extent Plaintiff can better define the conduct at issue). *See Griswold*, 2023 WL 5426581, at *3 (outlining "credible fear" factors). Further factual development

surrounding all of these uncertainties will also assist in demonstrating whether Plaintiff's claims are presently ripe for resolution. *See Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (ripeness is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements").

> II. **CCRD and Commission Defendants have established good cause to grant expedited discovery on Plaintiff's PI Motion.**

CCRD and Commission Defendants are also entitled to discovery for their response to the PI Motion, so as to develop a more fulsome record on whether Plaintiff's desired activities are regulated by CADA and thus whether Plaintiff can show a likelihood of success on the merits. All the "good cause" factors weigh in favor of granting expedited discovery for purposes of the PI Motion.

First, Plaintiff' PI Motion seeks to enjoin Defendants from enforcing the provisions at issue not only against Plaintiff's activities, but also "facially against anyone." ECF 15, at 2. In the First Amendment context, the test for a facial challenge is "whether a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (cleaned up). Plaintiff's request thus requires the Court to "assess the state law['s] scope," then to "decide which of the law['s] applications violate the First Amendment, and to measure them against the rest." *Id.* at 724-25. This undertaking requires more factual development than provided in the Complaint and PI Motion regarding the scope, content, and setting of Plaintiff's conduct and speech.

Moreover, Plaintiff's broad request would prohibit the CCRD from investigating certain complaints, thwarting the important antidiscrimination interests furthered by CADA. Indeed, it would prevent CADA enforcement for a broader range of conduct than

11

that described in the Complaint, and as applied to anyone. A preliminary injunction is an "extraordinary remedy," *U.S. ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989), and discovery would enable the Court to consider Plaintiff's request on a more developed record.

The second and third factors focusing on the breadth and purpose of the requested discovery similarly weigh in favor of discovery. The thrust of Plaintiff's Complaint and PI Motion is that its desire to misgender or deadname individuals in both selling its products and generally promoting its view on sports may violate CADA, subjecting it to investigation and enforcement actions. As outlined in Section III below, CCRD and Commission Defendants' proposed discovery is targeted at determining the validity of those claims. For example, discovery regarding the nature of Plaintiff's pop-up events at places of public accommodation may reveal that these activities are not subject to CCRD's jurisdiction. Similarly, discovery identifying the variety of speech that Plaintiff asserts is at issue (e.g., public speaking engagements, advertisements, social media posts, and/or customer interactions) will assist in determining whether or when it is operating as a place of public accommodation when undertaking these different activities, and potentially narrow the claims before the Court. The remaining requests are focused on identifying whether Plaintiff faces a real threat of being subject to a charge of discrimination, or whether its fears are instead speculative. Each of these elements is critical to Plaintiff's ability to show a likelihood of success on the merits and its risk of irreparable harm. Moreover, this discovery is not overbroad and is comparable in scope to discovery permitted in other cases and targeted at clarifying issues raised by the PI Motion. *See, e.g., Advantage Sales & Mktg. LLC*, 2018 WL 6252781, at *1-2

(approving a request for deposition of opposing party and service of four requests for production of documents, including "[a]ll documents concerning or reflecting a communication with any client or customer" over six months); *Icon Health & Fitness,* 2011 WL 13136539, at *2-3 (allowing depositions and requests for production, including pertaining to issues raised in declarations supporting preliminary injunction motion).

The fourth factor regarding burden on Plaintiff also weighs in favor of permitting discovery. Plaintiff has filed an extensive PI Motion, accompanied by a Verified Complaint including 214 paragraphs of factual allegations. All of CCRD and Commission Defendants' discovery requests seek information on matters that Plaintiff itself raised and relied on in the Complaint and PI Motion and should be readily available to Plaintiff. CCRD and Commission Defendants' targeted requests do not unreasonably burden Plaintiff given the significant impacts to the State—and its ability to protect Colorado citizens from discriminatory practices—from the relief Plaintiff seeks.

The fifth "good cause" factor, which concerns the timing of the discovery requests, also weighs in favor of permitting expedited discovery. Expedited discovery is appropriate at this juncture given that it will help resolve both whether Plaintiff has standing to bring these claims and the factual issues raised in the PI Motion, and the requests are not too far in advance of the normal discovery process. *See Denver Homeless Out Loud,* 2020 WL 6585795, at *7.

Finally, good cause exists because the "need for expedited discovery outweighs the possible prejudice" to Plaintiff. *Metal Bldg. Components, L.P.,* 2004 WL 7337726, at *4. Plaintiff would suffer no harm from postponing its PI Motion, because it is under no imminent threat of enforcement for violating the statutes it challenges. Transgender

13

status has been a protected class under CADA since 2008, and CCRD's rules have made clear that unlawful harassment based on sexual orientation can, depending on the circumstances, include misgendering or deadnaming individuals since 2009. Further, the Complaint identifies no charges filed with the CCRD over the past sixteen years, and no action taken by CCRD or the Commission, to investigate or prosecute any public accommodation for misgendering or deadnaming anyone—let alone enforcement action based on the kinds of conduct Plaintiff says it wishes to engage in. Nor is Plaintiff currently subject to ongoing investigations or enforcement actions by CCRD. Based on this history, Plaintiff faces no threat of imminent harm if a ruling on its PI Motion is delayed to accommodate the limited discovery required to allow a full and informed consideration of its request for "extraordinary" relief. *Enter. Mgmt. Consultants, Inc.*, 883 F.2d at 888-89.

### III. CCRD and Commission Defendants' proposed discovery is tailored to the issues of standing and ripeness and responding to the PI motion.

CCRD and Commission Defendants propose serving only two document requests and three interrogatories (provided in Exhibit A), and one short deposition of Plaintiff (topics provided in Exhibit B).[1]

Proposed Interrogatory No. 1 seeks information on Plaintiff's pop-up shops in Colorado, to determine whether these qualify as public accommodations. Proposed Interrogatory No. 2 seeks information on instances in which Plaintiff has deadnamed or

---

[1] CCRD and Commission Defendants anticipate this deposition will take less than a half day and are cognizant of limiting unnecessary discovery. To the extent the case proceeds to traditional discovery, CCRD and Commission Defendants will endeavor to limit any additional discovery or continued deposition of Plaintiff to the presumptive limits or will seek leave of court to exceed the written discovery and deposition length provided in the scheduling order.

misgendered an individual and/or complaints by individuals, which is directed to whether Plaintiff's interactions with the public are likely to subject it to a charge of discrimination and thus whether any asserted injury is imminent or purely speculative. Proposed Interrogatory No. 3 and Request for Production No. 1 are directed to the content of Plaintiffs' public statements and advertising and marketing materials, which will ensure the parties are speaking with specificity about the statements at issue and can determine whether any create a likelihood of a violation of CADA and/or an enforcement issue. Finally, Request for Production No. 2 seeks documents relied upon in answering the interrogatories

The proposed Rule 30(b)(6) deposition notice of Plaintiff similarly seeks information regarding Plaintiff's interactions with and statements regarding transgender individuals, and Plaintiff's concern that CADA prohibits its speech. This information will clarify what speech Plaintiff believes is at issue, whether Plaintiff is a "place of public accommodation" when engaging in such speech, and whether Plaintiff is likely to subject it to a charge of discrimination for such speech.

For the discovery schedule, CCRD and Commission Defendants request that (a) all written discovery be produced within two weeks of any order granting discovery, and (b) the deposition be completed within four weeks of any order granting discovery.

## CONCLUSION

For the reasons described above, CCRD and Commission Defendants respectfully request that the Court issue an Order authorizing them to conduct the discovery set forth in this motion.

Dated this 3rd day of July, 2025.

        PHILIP J. WEISER
        Attorney General

        For Defendants Aubrey C. Sullivan, Sergio Cordova, Geta Asfaw, Mayuko Fieweger, Daniel S. Ward, Jade R. Kelly and Eric Artis:

        *s/ Janna K. Fischer*
        Nora Passamaneck
        Senior Assistant Attorney General
        Helen Norton
        Deputy Solicitor General
        Janna K. Fischer
        Senior Assistant Attorney General
        Dominick D. Schumacher
        Assistant Attorney General
        1300 Broadway, 10th Floor
        Denver, CO 80203
        Telephone: (720) 508-6000
        FAX: (720) 508-6032