IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01668-DDD-SBP

COMMITTEE OF FIVE, INC. d/b/a XX-XY ATHLETICS,

Plaintiff,

v.

AUBREY C. SULLIVAN, et al.,

Defendants.

---

## THE ATTORNEY GENERAL'S MOTION TO DISMISS

---

Defendant Attorney General Philip J. Weiser hereby respectfully moves to dismiss the Complaint, Doc. 1.

### Certificate of Conferral

According to Judge Domenico's Practice Standard III(D)(1), counsel certifies that they conferred with counsel for Plaintiff regarding its argument that the Attorney General is protected by sovereign immunity, and that this deficiency could not be corrected by amendment. Plaintiff disagreed.

### INTRODUCTION

Plaintiff Committee of Five, Inc., a sports apparel retailer, "happily sells its products to anyone, regardless of any protected characteristics, including gender expression." Compl. ¶ 137. Nonetheless, it brings a pre-enforcement challenge to portions of the Colorado Anti-Discrimination Act ("CADA"), based on concerns that

its deadnaming and misgendering of public figures and stated intent to deadname and misgender customers may subject it to CADA enforcement in the wake of recent amendments to CADA. *See* HB 25-1312 § 8, *codified at* C.R.S. § 24-34-301(3.5), (9).

But the antidiscrimination rules Plaintiff challenges are not new. Despite HB25-1312's recent clarification that CADA's protected characteristic of "gender expression" includes one's chosen name and how one chooses to be addressed, "gender expression" has been a protected characteristic under CADA since 2021; transgender individuals have been a protected class under CADA since 2008; and the "Unwelcome" provisions that Plaintiff challenges facially have been part of CADA since the public accommodation provision was passed in 1979.

Despite this long history of CADA, Plaintiff does not allege the Attorney General has ever enforced these—or any—CADA provisions against anyone. Accordingly, sovereign immunity precludes Plaintiff's claims against the Attorney General. Even if the Court determines that the Eleventh Amendment does not bar Plaintiff's claims, then alternatively they still must be dismissed for the two substantive reasons set forth in the Division and Commission Defendants' Motion to Dismiss—namely, lack of standing and ripeness—which the Attorney General joins and adopts by reference in their entirety. In addition to those arguments, Plaintiff cannot show that it has standing, or that its claims are ripe, as to the Attorney General because there is no allegation he has or will enforce CADA against Plaintiff. Plaintiff's claims against the Attorney General should be dismissed.

## BACKGROUND

### I.    Factual background

Plaintiff sells athletic apparel through its website and pop-up shops in
Colorado. Compl. ¶¶ 32-38. In furtherance of its stated mission to "protect women's
sports and women's spaces," it releases advertisements criticizing the participation
of transgender athletes in women's sports. *Id.* ¶¶ 3-4. It also follows a policy of "not
knowingly us[ing] names, pronouns, honorifics, or other language inconsistent with
a person's biological sex." *Id.* ¶ 102. While Plaintiff "will gladly sell its products to
anyone," *id.*—and identifies no examples in which it has deadnamed or misgendered
a customer or potential customer (or how it might have occasion to do so during its
online retail sales)—Plaintiff fears that its advertisements and policy may subject it
to CADA enforcement. *Id.* ¶¶ 5-6.

### II.    The Colorado Anti-Discrimination Act

CADA prohibits places of public accommodation from engaging in certain
discriminatory practices based on an individual's protected characteristic. Part 6 of
CADA contains two operative clauses: the Accommodations Clause and the
Communication Clause. C.R.S. § 24-34-601(2)(a). The Accommodations Clause
makes it unlawful for a "place of public accommodation" "directly or indirectly, to
refuse, withhold from, or deny to an individual or a group . . . the full and equal
enjoyment of the goods, services, facilities, privileges, advantages, or
accommodations of a place of public accommodation." *Id.* The Communication

3

Clause makes it a discriminatory practice "directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual" or "that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable" (as to the latter provision, the "Unwelcome Provision"). *Id.*

Part 7 prohibits certain discriminatory practices by any "person that is the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation." *Id.* § 24-34-701(1). Under Part 7, it is unlawful to publish any statement that: (a) "[i]s intended or calculated to discriminate or actually discriminates against any person or class of persons"; (b) "[s]tates that any of the accommodations, rights, privileges, advantages, or conveniences of the place shall or will be refused" on account of a protected characteristic; or (c) "[s]tates that the patronage . . . by any person or class of persons . . . is unwelcome or objectionable or not acceptable, desired, or solicited" based on a protected characteristic (the "Unwelcome Advertising Provision"). *Id.*

The "Unwelcome" provisions, which Plaintiff seeks to facially invalidate, have been included in CADA since it was passed in 1979. *See* H.B. 1355, 1979 Colo. Sess. Laws. 937–38, available at https://scholar.law.colorado.edu/session-laws-1951-

4

2000/8050. Transgender individuals have been protected under CADA since 2008.
At that time, "sexual orientation" was added as a protected class and defined to
include "transgender status." *See* 2008 Colo. Legis. Serv. Ch. 341 (S.B. 08–200). The
statute was amended in 2021 to separately list "gender expression" and "gender
identity" as protected traits, with "gender expression" then defined as "an
individual's way of reflecting and expressing the individual's gender to the outside
world, typically demonstrated through appearance, dress, and behavior." *See* 2021
Colo. Legis. Serv. Ch. 156 (H.B. 21-1108). This year, HB 25-1312 amended the
definition of "gender expression" to expressly include an individual's "chosen name,
and how the individual chooses to be addressed." *See* H.B. 25-1312 § 8, *codified at*
C.R.S. § 24-34-301(3.5), (9). While the statutory amendment is recent, the Colorado
Civil Rights Division ("Division") has had a rule in effect since 2009 clarifying that
"[d]eliberately misusing an individual's preferred name, form of address, or gender-
related pronoun" can constitute unlawful harassment, depending on the
circumstances. Colo. Code Regs. § 708-1:81.6(A).

CADA is generally enforced by the Colorado Civil Rights Commission (the
"Commission"). Any person "aggrieved by a discriminatory" practice may file a
written charge with the Division. The Division investigates the charge, C.R.S. § 24-
34-306(2)(a), makes a probable cause determination, *id.* § 24-34-306(2)(b), orders
mediation, *id.* § 24-34-306(2)(b)(II), and, if necessary, reports the charge to the
Commission, *id.* § 24-34-306(2)(c)(4). The Commission then makes an independent

5

determination whether a hearing is warranted, and if so, the Commission's attorney presents the case for the complainant. *Id.* §§ 24-34-306(4) & (8).

The Complaint's sole allegation related to the Attorney General is that he "has authority to enforce" CADA, citing C.R.S. § 24-34-306. Compl. ¶ 18; *also id.* ¶ 160. Under that law, the Attorney General may file a charge with the Division, if he determines that an alleged discriminatory practice "imposes a significant societal or community impact." C.R.S. § 24-34-306(1)(b). If the Attorney General files a charge, he does so "in the same manner" as an individual complainant. *Id.*

## ARGUMENT

Plaintiffs' claims against the Attorney General should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff cannot establish any waiver of sovereign immunity and Plaintiff lacks standing. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (Eleventh Amendment immunity implicates the court's subject matter jurisdiction); *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1225 (10th Cir. 2012) (standing). As explained below, Plaintiff has failed to carry is burden of establishing jurisdiction. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008) (burden on plaintiff to establish subject matter jurisdiction); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("*SBA List*") (same, regarding standing).

I.    **Plaintiff's claims against the Attorney General are barred by sovereign immunity.**

Eleventh Amendment sovereign immunity "precludes unconsented suits in federal court against a state and arms of the state." *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009). State officials sued in their official capacities are immune because they are "an arm of the State," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), and "such suits are no different from a suit against the State itself," *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (quotations omitted). The only potentially applicable exception to this immunity—*Ex parte Young*, 209 U.S. 123 (1908)—does not apply here.

*Ex parte Young* recognizes that in certain circumstances, a plaintiff may seek prospective relief against a state official to enjoin alleged ongoing violations of federal law. *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024). But it is a "narrow exception." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). To come within the *Ex parte Young* exception, the state official whom a plaintiff seeks to enjoin must have (1) "a particular duty to enforce" the challenged statute and (2) "a demonstrated willingness to exercise that duty." *Free Speech Coal.*, 119 F.4th at 736 (citations omitted). And "when a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official *absent some evidence* that the defendant is connected to the enforcement of

the challenged law." *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013)
(emphasis added).

An official's enforcement authority is critical to the exception. The theory
behind the *Young* exception is that "if a state official violates federal law, he is
stripped of his official or representative character and may be personally liable for
his conduct; the State cannot cloak the officer in sovereign immunity." *Idaho v.
Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 288 (1997) (O'Connor, J., concurring).
Where a state official enjoys enforcement authority, a federal court can, in effect,
prospectively inform the official that if the official takes enforcement action, they
will be acting in excess of their authority and no longer enjoy immunity. Otherwise,
the lawsuit "is merely making him a party as a representative of the state, and
thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157.
Neither element of the *Ex parte Young* test is met here.

First, the Attorney General has no "particular duty" to enforce CADA. The
only allegation in the Complaint regarding the Attorney General's enforcement
authority cites § 24-34-306. Compl. ¶ 18. But under that statute, the Attorney
General has neither an affirmative duty to act, nor the independent power to
enforce CADA related to public accommodations. CADA is generally enforced by the
Division and Commission, upon the filing of a charge by an aggrieved individual.
Under § 24-34-306(1)(b), the Attorney General *may* file a discrimination charge with
the Division—and only after he determines any alleged discriminatory practice

8

"imposes a significant societal or community impact." If the Attorney General files a
charge, he does so "in the same manner" as an individual complainant, *id.*, which is
to say the Division—not the Attorney General—investigates and has discretion to
make a probable cause finding about the Attorney General's charge, and the
Commission—not the Attorney General—has the sole authority to enforce CADA at
a hearing.

In other cases, the Tenth Circuit has held that a state attorney general is
entitled to sovereign immunity where he was not required to sue on behalf of a
victim of discrimination, *Chamber of Commerce of the United States v. Edmondson*,
594 F.3d 742, 760 (10th Cir. 2010), or where an independent board was authorized
to enforce a challenged law, *Hendrickson*, 992 F.3d at 967. Although those cases did
not involve permissive power to file a complaint with an enforcement authority,
they nonetheless support the conclusion that the Attorney General's authority as an
individual complainant to an independent enforcement body falls short of having a
"particular duty" to enforce. *Edmondson*, 594 F.3d at 760 (holding that Oklahoma
attorney general was entitled to sovereign immunity for challenge to portion of
statute designating certain conduct as discriminatory practice because attorney
general lacked authority to prosecute that kind of discriminatory practice and
statute placed enforcement authority in human-rights commission); *Hendrickson*,
992 F.3d at 967 (holding that New Mexico attorney general was entitled to
sovereign immunity where challenged law empowered the independent Public

9

Employee Labor Relations Board—not the attorney general—to enforce state's exclusive representation law). Analogously, here the Division and Commission carry out enforcement; the Attorney General lacks independent authority to enforce CADA.

Though one district court has held that the Attorney General has a duty to enforce CADA because lawyers in the Attorney's General office represent the Commission in administrative enforcement actions, *see Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1253 (D. Colo. 2019), this Court should decline to follow that case. *See Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1085 (D. Colo. 2017) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)). When lawyers employed by the Attorney General's office represent the Commission, they serve as its agents and act in furtherance of its goals and interests. In that scenario, the Attorney General acts with no independent or discretionary enforcement authority that need be enjoined. *See* Colo. RPC 1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation[.]"). Rather, the Commission, as the client, directs the enforcement action. *See* C.R.S. § 24-34-306(4) (the Commission "shall issue" notice and complaint). In fact, when lawyers from the Attorney General's office represent a state agency client, they do so out of a general statutory

10

obligation.[1] *E.g.*, *id.* § 24-31-101(1)(a) (the Attorney General "[s]hall act as the chief legal representative of the state and be the legal counsel and advisor of each department, division, office, board, commission, bureau, and agency of state government"). Applying the *Ex parte Young* exception based on the Attorney General's office's role in representing the Commission would thus amount to finding the exception met because of the Attorney General's generalized role as legal counsel for state entity clients. Such general legal duties have been repeatedly deemed insufficient to draw the Attorney General into *Ex parte Young*'s exception to sovereign immunity. *See, e.g.*, *Free Speech Coal.*, 119 F.4th at 739; *Edmondson*, 594 F.3d at 760. Moreover, to find that the Attorney General has a "duty to enforce" the law any time lawyers from his office represent a state client would mean, absurdly, that the Attorney General is a necessary party—lacking sovereign immunity—any time lawyers from his office represent a state board, commission, or department which enforces a challenged state statute.

---

[1] This fact, too, distinguishes this case from *Bella Health and Wellness et al. v. Weiser et al.*, where the Court determined the Attorney General had a particular duty to enforce the Colorado Medical Practice Act because of a "specific, statutorily enumerated duty to prosecute those charges that have been referred to him by the inquiry panel." 23-CV-0939-DDD-SBP, Order on Motions for Summary Judgment, Doc. 224 at 22 (D. Colo. entered Aug. 1, 2025) (text only). CADA does not contain such a "specific, statutorily enumerated duty to prosecute." *Compare* C.R.S. § 12-240-125(5)(d) ("The attorney general shall prosecute those charges…"), *with* § 24-34-306(8) ("The case in support of the complaint shall be presented at the hearing by one of the commission's attorneys or agents."). Only in the Commission's own rules does it make the "attorney general's office" its attorney for such purposes. *See* 8 CCR 708-1, Rule 10.7(A)(3).

Nor does the Tenth Circuit's decision in *303 Creative LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021), suggest that *Ex parte Young* applies. There, the Tenth Circuit described Colorado as having "conceded" that the Attorney General has "limited enforcement authority" under CADA in addressing traceability for purposes of the plaintiff's standing. *Id.* at 1175. But that is not an identical question to whether the Attorney General has a "particular duty to enforce" for purposes of sovereign immunity. And to put a finer point on it, Colorado does *not* concede here that the Attorney General has limited authority to enforce CADA and instead contends that he may, but not must, file a charge of discrimination for investigation by the Division and potential prosecution by the Commission just like any other complainant. *See* § 24-34-306(1)(b).

As to the second *Ex parte Young* element, Plaintiff alleges no facts showing the Attorney General has ever exhibited a "demonstrated willingness" to exercise his limited, permissive authority to serve as a complainant under § 24-34-306(1)(b). Plaintiff has not identified any instance in which a Colorado Attorney General has ever filed a charge with the Division, let alone a complaint related to misgendering or deadnaming. Similarly, Plaintiff fails to allege any plausible facts establishing that the Attorney General has any future intent to file a charge with the Division. Nor has Plaintiff shown how an allegation against it—a niche online clothing retailer that interacts with customers only at occasional pop-up events—could

amount to a "significant societal or community impact" sufficient to justify the filing
of a discrimination charge by the Attorney General.

Given the Attorney General lacks a particular duty to enforce CADA and
Plaintiff has failed to provide some evidence that the Attorney General has a
demonstrated willingness to exercise even his limited discretion to serve as a
complainant, suit against him is barred by sovereign immunity.

## II.    Plaintiff lacks standing, and its claims are not ripe.

Alternatively, and pursuant to Rule 10(c), the Attorney General joins and
adopts by reference two of the three arguments raised in the Division and
Commission's Motion to Dismiss in their entirety—namely that Plaintiff lacks
standing (Section I) and that this suit is not ripe for judicial review (Section II). In
addition to those arguments, Plaintiff lacks standing for its claims against the
Attorney General because it has not plausibly alleged that it faces a credible threat
that the Attorney General will enforce CADA against it.

For an individual plaintiff to have standing, it must establish that it
"(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of
the defendant, and (3) that is likely to be redressed by a favorable judicial decision."
*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A plaintiff asserting a pre-
enforcement challenge can satisfy the "injury in fact" requirement by showing "(1)
an intention to engage in a course of conduct arguably affected with a constitutional
interest, but proscribed by the challenged statute, and (2) that there exists a

credible threat of prosecution thereunder." *Frank v. Lee*, 84 F.4th 1119, 1133 (10th Cir. 2023) (internal quotation marks and alterations omitted). The Tenth Circuit looks to three non-exhaustive factors in assessing "credible threat": "(1) whether the plaintiff showed past enforcement against the same conduct; (2) whether authority to initiate charges was not limited to a prosecutor or an agency and, instead, any person could file a complaint against the plaintiffs; and (3) whether the state disavowed future enforcement." *303 Creative LLC* v. *Elenis*, 6 F.4th 1160, 1174 (10th Cir. 2021) (citing *SBA List*, 573 U.S. at 164–65).

As to the first factor, Plaintiff has not identified any past instance in which the Attorney General has filed any charge with the Division alleging any violation of CADA by anyone, let alone a complaint related to misgendering or deadnaming. Nor has Plaintiff identified any past instance in which the Attorney General has attempted to wrest the power to directly enforce CADA from the Commission. This absence of past enforcement against the same conduct (or even of the same statute, which has long been on the books) weighs against any credible threat of enforcement. *303 Creative LLC*, 6 F.4th at 1174.[2] Nor has Plaintiff identified any

---

[2] In *303 Creative*, the Tenth Circuit treated all defendants equivalently in assessing whether there was a credible threat of enforcement. *303 Creative LLC*, 6 F.4th at 1174. But because a plaintiff must have standing for each form of relief sought, *see Friends of the Earth, Inc.*, 528 U.S. at 185, Plaintiff must establish standing specifically as to its request here for an injunction against the Attorney General. *See Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1205 (D. Colo. 2023) ("[S]tanding is generally evaluated for each claim and as to *each defendant*, not collectively.").

reason why the Attorney General's longstanding trend of CADA non-enforcement is likely to change. Given this consistent history, the fact that CADA permits the Attorney General to file a charge with the Division is not sufficient to establish a credible threat. *See Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1204-06 (D. Colo. 2023) (finding that "long history of non-enforcement" and lack of any "apparent reason why [the defendants] would change their policy of never pursuing civil enforcement actions under that law" weighed against finding credible threat of enforcement); *see also Bella Health and Wellness et al. v. Weiser et al.*, 23-CV-0939-DDD-SBP, Order on Motions for Summary Judgment, Doc. 224 at 24-25 (D. Colo. entered Aug. 1, 2025) (reasoning similarly for Attorney General); *cf. Peck v. McCann*, 43 F.4th 1116 (10th Cir. 2022) ("To meet the requirement of showing a credible threat . . . [a plaintiff] must demonstrate an objectively justified fear of real consequences." (quotation marks omitted)).

Thus, this Court should find Plaintiffs have failed to show an injury in fact sufficient to justify standing or ripeness.

## CONCLUSION

Plaintiff's claims against the Attorney General should be dismissed.

RESPECTFULLY SUBMITTED this 8th day of August, 2025,

PHILIP J. WEISER
Attorney General

s/ *Lane Towery*
_____
LANE TOWERY*
Assistant Attorney General
TALIA KRAEMER*
Senior Assistant Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, Colorado  80203
Telephone:  (720) 508-6000
lane.towery@coag.gov
talia.kraemer@coag.gov
*Counsel of Record

*Counsel for the Attorney General in his official capacity*

**Certificate of Compliance with Type-Volume Limitations**

Pursuant to Judge Domenico's Practice Standard III(A)(4), I hereby certify that the foregoing pleading complies with the volume limitation set forth in Practice Standard III(A)(1) and the Order granting excess pages (Doc 39) because it has 3,610 words and with the typeface requirement in Practice Standard I(D) because it is filed in Century Schoolbook, a proportionally spaced, serif font.

s/ *Lane Towery*
_____
LANE TOWERY

16