# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Regina M. Rodriguez

**Civil Action No. 25-cv-01572-RMR-MDB**

DEFENDING EDUCATION, *et al.*,

    Plaintiffs,

v.

AUBREY C. SULLIVAN, Director of the Colorado Civil Rights Division (the "Division"), in her official capacity;
SERGIO RAUDEL CORDOVA, GETA ASFAW, MAYUKO FIEWEGER, DANIEL S. WARD, JADE ROSE KELLY, and ERIC ARTIS, as members of the Colorado Civil Rights Commission, in their official capacities; and
PHIL WEISER, Colorado Attorney General, in his official capacity,

    Defendants.

**Civil Action No. 25-cv-01668-RMR-MDB**

COMMITTEE OF FIVE, INC. d/b/a XX-XY ATHLETICS,

    Plaintiff,

v.

AUBREY C. SULLIVAN, Director of the Division, in her official capacity, *et al.*,

    Defendants.

**Civil Action No. 25-cv-02177-RMR-MDB**

DOXA ENTERPRISES, LTD d/b/a Born Again Used Books,

    Plaintiff,

v.

AUBREY C. SULLIVAN, Director of the Division, in her official capacity, *et al.*,

    Defendants.

---

## ORDER ADOPTING MAGISTRATE JUDGE RECOMMENDATION

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Maritza Dominguez Braswell. On February 19, 2026, Magistrate Judge Braswell held a hearing addressing three motions for preliminary injunction in three related cases: *Defending Education, et al, v. Sullivan, et al.*, No. 25-cv-01572-RMR-MDB ("Defending Education"); *Committee of Five, Inc. v. Sullivan, et al.*, No. 25-cv-01668-RMR-MDB ("Committee of Five"); and *Doxa Enterprises, Ltd., v. Sullivan, et al.*, No. 25-cv-02177-RMR-MDB ("Doxa"). At the end of the hearing, Magistrate Judge Braswell pronounced the Recommendation: *Defending Education*, ECF No. 102; *Committee of Five*, ECF No. 87; and *Doxa*, ECF No. 49.

The motions addressed in the Recommendation are motions for preliminary injunction filed by Plaintiff(s) in each case: *Defending Education*, ECF No. 27; *Committee of Five*, ECF No. 15; and *Doxa*, ECF No. 4. Magistrate Judge Braswell recommends denying each motion for preliminary injunction. Plaintiff(s) timely filed an objection to the Recommendation in each case: *Defending Education*, ECF No. 110; *Committee of Five*, ECF No. 95; and *Doxa*, ECF No. 57. Defendants filed a response in each case: *Defending Education*, ECF No. 112; *Committee of Five*, ECF No. 97; and *Doxa*, ECF No. 59.

The Court has reviewed the Recommendation, as well as the objections, the responses, the record, and the pleadings in each case. For the reasons stated below, the Court overrules the objections and adopts the Recommendation.

2

## I.    BACKGROUND

The central issue in this case is whether the Court should enjoin enforcement of Colorado's amended anti-discrimination law. All Plaintiffs allege the amended statute unconstitutionally regulates their speech, violating the First and Fourteenth Amendment.[1] The Colorado Anti-Discrimination Act ("CADA") prohibits discrimination in places of public accommodation. *See* Colo. Rev. Stat. § 24-34-601. In May 2025, Colorado passed HB25-1312 (the "Act"), which amends portions of the CADA. Plaintiffs challenges the constitutionality of CADA's discrimination in places of public accommodation statute with the Act's amended definitions.

### A.  Colorado Statutes at Issue

The "Discrimination in places of public accommodation" statute under CADA as amended states:

> It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability, race, creed, color, sex, sexual orientation, **gender identity**, **gender expression**, marital status, national origin, or ancestry the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation **or, directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual or that an individual's patronage or presence at a place of public accommodation is**

---

[1] Because these cases involve "a common question of law or fact," the Court addresses the *Defending Education*, *Committee of Five*, and *Doxa* preliminary injunction motions in this consolidated Order "to avoid unnecessary cost or delay" under Fed. R. Civ. P. 42(a).

> **unwelcome, objectionable, unacceptable, or undesirable**
> because of disability, race, creed, color, sex, sexual
> orientation, **gender identity**, **gender expression**, marital
> status, national origin, or ancestry.

Colo. Rev. Stat. § 24-34-601(a)(2) (emphases added). The Act amends CADA's definition

of "gender expression" to:

> an individual's way of reflecting and expressing the
> individual's gender to the outside world, typically
> demonstrated through appearance, dress, behavior, **chosen
> name**, and how the individual chooses to be addressed.

*Id.* § 24-34-301(9) (emphasis added). It also amends "chosen name" to mean:

> a name that an individual requests to be known as in
> connection to the individual's disability, race, creed, color,
> religion, sex, sexual orientation, gender identity, gender
> expression, marital status, familial status, national origin, or
> ancestry, so long as the name does not contain offensive
> language and the individual is not requesting the name for
> frivolous purposes.

*Id.* § 24-34-301(3.5). And finally, "gender identity" is defined under CADA as:

> an individual's innate sense of the individual's own gender,
> which may or may not correspond with the individual's sex
> assigned at birth.

*Id.* § 24-34-301(10).

### B. Background on *Defending Education*, *Committee of Five*, and *Doxa* Plaintiffs

*Defending Education* plaintiffs are various non-profit organizations (Defending

Education, Colorado Parent Advocacy Network, Protect Kids Colorado, and Do No

Harm), two individuals (Dr. Travis Morrell and Dr. Valeri Leswing), and Dr. Leswing's

medical practice, Mountain Pediatrics. *Defending Education*, ECF No. 27 at 12-13. The

organizations "hold traditional views on matters of sex and gender identity" and "believe

that sex is determined at birth and immutable." *Id.* at 13. They host events in places of public accommodation and want "to refer to individuals at these events using biological pronouns, birth names, and other biologically accurate terms, even if those pronouns, names, or terms conflict with an individual's self-professed gender identity or expression." *Id.* at 13. Dr. Morrell and Dr. Leswing possess "scientific, objective, and reproducible views on matters of sex and gender identity." *Id.* at 14. Dr. Morrell also "wants to refer to individuals using birth names and biologically accurate pronouns and other terms" when writing or speaking publicly about issues of sex and gender. *Id.* Dr. Leswing "wishes to issue a public statement notifying potential patients that she will not refer to them using chosen names, preferred pronouns, or other non-biological terms." *Id.* at 15.

The *Defending Education* organizations allege the Act forces them to stop addressing individuals by their biological pronouns in places of public accommodation and prohibits them from publishing materials that refer to individuals using biologically accurate pronouns, birth names, and other terms inconsistent with their purported gender identity or gender expression. *Id.* Dr. Morrell and Dr. Leswing "fear that their medical practices will be investigated and punished for their speech," and Dr. Morrell fears termination of his ownership interest or other disassociation from his medical practice if he is investigated. *Id.*

*Committee of Five* plaintiff is an athletic-apparel retailer called XX-XY Athletics ("XX-XY") with a distinct message and mission: "to empower women and protect women's sports and women's spaces." *Committee of Five*, ECF No. 1 ¶ 1. XX-XY's message and mission are "grounded in the belief that men and women are physiologically different; sex

5

is binary, biological, and immutable; women deserve the chance to be champions in their own sports." *Id.* XX-XY uses its platform to draw attention to "men and boys who compete in women's sports" and "refers to them with masculine pronouns and terms, often using their given name, rather than their chosen names." *Id.* ¶ 2. In one instance, XX-XY published a video on X "protesting a male athlete competing in girls' high-school track in Pennsylvania." *Id.* ¶ 3. The post included the text: "Sean 'Luce' Allen is having a track season to remember. Meanwhile girls are receiving a message they'll never forget. When boys run girls' track, they win. *And girls lose*." *Id.* The post refers to the athlete as a "boy" and uses the athlete's given name. *Id.* XX-XY alleges that if it could not refer to male athletes as "male," "men," or "boys," its advertisements would not make sense. *Id.* ¶ 4. It asserts that "the Act coerces the company to speak against its principles and alter the meaning of its core message." *Id.* ¶

Finally, *Doxa* plaintiff is a Christian bookstore, Born Again Used Books, in Colorado Springs with the "mission [] to provide literature that supports customers in their relationship with God and others." *Doxa*, ECF No. 4-1 at 10. To achieve this, Born Again Used Books "curates its selection according to its Christian faith, refusing to sell books with a message contradicting the store's mission of providing uplifting Christian support." *Id.* "To stay faithful to these beliefs," Born Again Used Books "will not use pronouns, honorifics, or other language inconsistent with a person's sex." *Id.* at 9. Additionally, it would like to "formalize this policy, publish it to its employees and customers, and publicly explain the religious basis for the policy, including by writing about it on the Bookstore's blog." *Id.* However, Born Again Used Books "happily sells books to everyone." *Id.* It "fears

that if it formalized its policy on gender identity and pronouns and spoke about that policy on its blog, Colorado would swoop in to punish it under CADA." *Id.* at 12.

*Defending Education* plaintiffs, XX-XY, and Born Again Used Books (collectively, "Collective Plaintiffs") seek as-applied pre-enforcement preliminary injunctions under the First and Fourteenth Amendment enjoining Defendants from enforcing CADA on them. *Defending Education*, ECF No. 25; *Committee of Five*, ECF No. 15; *Doxa*, ECF No. 4.

### C. First Amendment Pre-Enforcement Claims

To establish standing for its First Amendment pre-enforcement claim, Collective Plaintiffs must demonstrate they "intend[] to engage in arguably protected conduct that is covered by the challenged governmental action" and "face[] a credible threat of enforcement." *Gays Against Groomers v. Garcia*, No. 24-1473, 2026 WL 668378, at *5 (10th Cir. Mar. 10, 2026). The plain language of CADA's public accommodation statute describes prohibited "discriminatory conduct" as "to refuse, withhold from, or deny to an individual or a group, because of . . . gender identity, gender expression . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a public place of accommodation." Colo. Rev. Stat. § 24-34-601. Therefore, Collective Plaintiffs' intended conduct—to refer to individuals using pronouns, honorifics, or titles that are consistent with that person's biological sex without denying goods or services—does not appear on its face to violate CADA or present a credible threat of enforcement. For these reasons, and those stated below, the Court accepts the Recommendation and denies each Collective Plaintiffs' Motion for Preliminary Injunction.

## II.    LEGAL STANDARD

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

## III.    THE RECOMMENDATION

Magistrate Judge Braswell opens and closes her Recommendation emphasizing that "[a] preliminary injunction is an extraordinary remedy, the exception rather the rule." *Doxa*, ECF No. 54 at 79:7-10 (quoting *Gunnison Cnty. Stockgrowers' Ass'n, Inc. v. U.S. Fish & Wildlife Serv.*, 707 F. Supp. 3d 1056, 1062 (D. Colo. 2023)); *id.* at 91:22-25. She also highlights several threshold considerations. First, there is no "freestanding constitutional right to pre-enforcement review in federal court." *Id.* at 79:22-80:2 (quoting *Uber Techs., Inc. v. Moss*, No. 1:25-CV-00096-DDD-KAS, 2025 WL 1420940, at *3 (D. Colo. Jan. 31, 2025)). Second, the injunctive relief requested is exceptionally broad. *Id.*

8

80:3-8. Third, the motions for preliminary injunction seek the same relief as its complaint, which is disfavored. *Id.* at 80:12-16 (citing *Free the Nipple v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019)). Fourth, granting a preliminary injunction would disturb rather than preserve the status quo. *Id.* at 81:5-11. And fifth, even if the Court were to enjoin Defendants from enforcing the challenged provisions, Collective Plaintiffs would still be required to comply with CADA or risk suit by an aggrieved individual. *Id.* at 81:18-25. Magistrate Judge Braswell explains the evidence "suggests that [Collective] Plaintiffs feel the pressure more significantly from the public at large than anything else. . . . Thus, from the Court's perspective, [Collective] Plaintiffs' own statements demonstrate that a preliminary injunction would be of limited practical value and would not cure the dilemma that they describe." *Id.* at 82:18-83:5.

Next, Magistrate Judge Braswell turns to the factors Collective Plaintiffs must prove to succeed on a request for pre-enforcement preliminary injunction. She first considers the likelihood of success on the merits and the fundamental question of standing. *Id.* at 83:9-22. Magistrate Judge Braswell explains that even if Collective Plaintiffs made a clear showing that their speech is actually prescribed and chilled, "the absence of a credible threat of enforcement can be dispositive in a pre-enforcement standing analysis." *Id.* at 84:13-20 (citing *Moms for Liberty - Wilson Cnty., Tennessee v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 512 (6th Cir. 2025)). When analyzing credible threat of enforcement, Magistrate Judge Braswell evaluates three factors: (1) whether the Collective Plaintiffs showed past enforcement against the same conduct; (2) whether authority to initiate the charges was not limited to a prosecutor or an agency and instead

9

any person can file a complaint; and (3) whether the state disavowed future enforcement. *Id.* at 84:21-85:2. She also highlights that "[e]ach element must be supported in the same way as any other matter on which the [Collective] Plaintiff bears the burden of proof, *i.e.*, with the same manner and degree of evidence required at the successive stages of the litigation." *Id.* at 85:7-14 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). At the preliminary injunction stage, the plaintiff must make a "clear showing that she is likely to establish each element of standing." *Id.* at 85:15-22 (citing *Murthy v. Missouri*, 603 U.S. 43, 58 (2024)). Therefore, Magistrate Judge Braswell applies the clear showing standard. *Id.* at 85:23-86:6.

Magistrate Judge Braswell distinguishes *Darren Patterson Christian Acad. v. Roy*, 699 F. Supp. 3d 1163, 1169 (D. Colo. 2023) and highlights that, in that case, Judge Domenico recognized the presumption of enforcement for new laws but did not adopt the presumption himself. *Id.* at 85:2-10. She also explains that Collective Plaintiffs overstates *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 387 (1988), because the statute in that case was directed at plaintiffs and imposed criminal prosecution as a penalty. *Id.* at 86:17-87:1. Then, she clarifies that Defendant Sullivan's interpretation of the subject CADA provisions, while not law, helps demonstrate that the mere act of speaking would not automatically trigger enforcement and that this operates like a disavowal under factor three (whether the state disavowed future enforcement). *Id.* at 87:15-88:23. Regarding factor one (whether the Collective Plaintiffs showed past enforcement against the same conduct), Magistrate Judge Braswell calls attention to the fact that the Colorado Civil Rights Division (the "Division") has not received any complaints about Collective Plaintiffs'

misgendering and that the Division has not warned them that their desired approach is unlawful. *Id.* at 88:24-89:6. She ultimately determines that these two of the three factors are enough to weigh against a finding of credible threat of enforcement and that Collective Plaintiffs have "not demonstrated a credible threat under the heavy burden that applies to these preliminary injunction motions." *Id.* at 90:2-25. With respect to factor two (whether authority to initiate the charges is limited to a prosecutor or an agency), Magistrate Judge Braswell states that any person can file a charge alleging discrimination under CADA. *Id.* at 90:9-14. Collective Plaintiffs contend that the authority to initiate charges remains with the Division, because it can choose which complaints to take action on. *Id.* at 90:15-20. Even if this factor weighed in favor of Collective Plaintiffs, Magistrate Judge Braswell finds the balance of the three factors weigh against them. *Id.* at 90:21-25. Thus, she determines that Collective Plaintiffs have not established a credible threat of enforcement to have standing.

Finally, Magistrate Judge Braswell notes that "the balance of harms and public interest do not favor the sweeping injunctions [Collective] Plaintiffs seek." *Id.* at 91:7-17. Thus, she recommends the preliminary injunction requests be denied.

## IV.    ANALYSIS

### A.  Threshold Considerations

Collective Plaintiffs object to the Recommendation's threshold considerations, arguing that "none has merit." ECF No. 57 at 1. Plaintiff makes six arguments: (1) a preliminary injunction could be undone after trial; (2) a preliminary injunction would not disrupt the status quo; (3) preliminary injunctions are proper in pre-enforcement litigation;

(4) Collective Plaintiffs seek an appropriate scope of relief; (5) CADA's enforcement scheme counsels for preliminary relief, not against it; and (6) standing requirements are applied leniently in First Amendment cases. The Court addresses each argument below.

First, Collective Plaintiffs object to the Recommendation's fourth threshold consideration that they seek a disfavored injunction. Disfavored injunctions prompt "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-the-harms factors." *Free the Nipple*, 916F.3d at 797. Collective Plaintiffs argue that they are not seeking a disfavored injunction because, although their complaints and motions for preliminary injunction seek the same relief, the preliminary injunction can be undone. *Committee of Five*, ECF No. 95 at 7-8; *Doxa*, ECF No. 57 at 7-8 (citing *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1247 (10th Cir. 2001)). Collective Plaintiffs contend the instant case is similar to *Pierce*, where the Tenth Circuit determined "the preliminary injunction granted by the district court did not, as the defendants contend, afford the tribe substantially all the relief it might recover." 253 F.3d at 1278. The Court agrees. In *Pierce*, the plaintiff's complaint alleged that "the state was compelled to grant recognition to tribal motor vehicle registrations and titles pursuant to the Indian Commerce Clause, the Kansas Act for Admission, and other federal law." *Id.* at 1239. The preliminary injunction motion sought to "enjoin the Defendants from enforcing the Kansas motor vehicle registration and titling laws against the Plaintiff and any persons who operate or own a vehicle registered and titled the Tribal Code § 17-10-1 *et seq*." *Id.* Here, Collective Plaintiffs' complaint seeks a "preliminary and permanent injunction" to enjoin Defendants and those acting in concert with them from enforcing CADA as applied to Collective

Plaintiffs and "third-party speakers similarly situated to" them. *Committee of Five*, ECF No. 1 at 50; *Doxa*, ECF No. 1 at 40. Collective Plaintiffs' preliminary injunction requests only seek to enjoin Defendants from enforcing CADA as applied to Collective Plaintiffs. *Committee of Five*, ECF No. 15 at 1-2; *Doxa*, ECF No. 4 at 1-2. Thus, the Court is persuaded by Collective Plaintiffs' argument that granting their preliminary injunction requests would not afford them all the relief they might recover.

However, another type of disfavored injunction is one that would alter the status quo. *Free the Nipple*, 916 F.3d at 797. Collective Plaintiffs argue a preliminary injunction would not disrupt status quo. The Court disagrees. As Defendants note, the CADA provisions at issue were in place decades before the passage of the Act and, the "Commission Rules have explicitly outlined when misgendering and deadnaming rise to a CADA violation since 2009." *Committee of Five*, ECF No. 97 at 4; *Doxa*, ECF No. 59 at 4. Commission Rule 81.6(A)(4), which went into effect November 30, 2009, prohibits "[d]eliberately misusing an individual's preferred name, form of address, or gender-related pronoun" as unlawful harassment. 3 CCR 708-1-81.6(4). Thus, Collective Plaintiffs' argument that CADA as applied prior to the Act only prevented discrimination in furnishing tangible goods does not hold weight. Their requested injunctions would disrupt CADA's decades-long history. Accordingly, the Court agrees with the Recommendation's finding that Collective Plaintiffs seek a disfavored injunction.

Next, Collective Plaintiffs object to Magistrate Judge Braswell's determination that pre-enforcement actions are "particularly fraught" because there is no "freestanding constitutional right to pre-enforcement review in federal court." *Committee of Five*, ECF

No. 95 at 9; *Doxa*, ECF No. 57 at 9. They argue that the Tenth Circuit regularly grants pre-enforcement preliminary injunctions and that "*Uber Technologies* merely stands for the proposition that a pre-enforcement plaintiff seeking a preliminary injunction must show a credible threat to avoid an 'advisory ruling.'" *Committee of Five*, ECF No. 95 at 9; *Doxa*, ECF No. 57 at 9 (citing *Uber Technologies*, 2025 WL 1420940, at *3). The Court finds Collective Plaintiffs' reasoning coincides with the Recommendation. The Court interprets Magistrate Judge Braswell's statement that there is no "freestanding constitutional right to pre-enforcement review in federal court" to mean that a preliminary injunction is an extraordinary remedy and that Collective Plaintiffs must meet their burden in demonstrating the right to a pre-enforcement preliminary injunction. Collective Plaintiffs do not (and cannot) dispute this.

Fourth, Collective Plaintiffs contend the relief they seek is appropriate in scope and not "exceptionally broad" as stated in the Recommendation. *Committee of Five*, ECF No. 95 at 9; *Doxa*, ECF No. 57 at 9. The Court acknowledges that the Recommendation addresses all three preliminary injunction motions filed by different groups of plaintiffs. Thus, certain statements made in the Recommendation may apply more directly to some plaintiff's motions and not others. The Court agrees that injunctive relief must be "narrowly tailored to remedy the harm shown." *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir. 2002). However, the scope of each Collective Plaintiffs' relief requested was not the basis for the recommended denial of injunctive relief, and the Court will not give this consideration extra weight.

Fifth, Collective Plaintiffs object to the Recommendation's interpretation of CADA's enforcement scheme as it relates to their motions for preliminary injunction. Collective Plaintiffs argue "an injunction need not relieve every conceivable injury to provide an appropriate remedy." *Committee of Five*, ECF No. 95 at 10; *Doxa*, ECF No. 57 at 10 (citing *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021)). The Recommendation does not bring up CADA's private right of action to indicate that an injunction needs to relieve "every conceivable injury." Instead, CADA's private right of action allows individuals to file the type of complaints Collective Plaintiffs seek to enjoin Defendants from pursuing. This part of CADA's enforcement scheme highlights the fact that the grant of Collective Plaintiffs' preliminary injunction motions against Defendants "would not cure the dilemma that [Collective Plaintiffs] describe." ECF No. 54 at 82:18-83:5. Thus, the Recommendation appropriately considers this threshold issue before reaching the merits of the case.

Finally, Collective Plaintiffs contend the Recommendation incorrectly applied the heightened "clear showing" standard in its analysis. *Committee of Five*, ECF No. 95 at 11; *Doxa,* ECF No. 57 at 11. Relying on *Peck*, Collective Plaintiffs argue that standing requirements should be applied "leniently" in First Amendment cases. (citing *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022)). Collective Plaintiffs fail to address the rest of the Tenth Circuit's statement—"the First Amendment context creates unique interests that lead us to apply the standing requirements *somewhat more leniently*, facilitating pre-enforcement suits." *Peck*, 43 F. 4th at 1129 (emphasis added). The Tenth Circuit goes on to explain that a plaintiff bringing a First Amendment claim can prove

standing by: (1) "alleging an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a *credible threat of prosecution* thereunder" or (2) "alleging a *credible threat of future prosecution* plus an ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights." *Id.* (emphases added). This does not contradict the Recommendation's application of the "clear showing" standard. *See Murthy*, 603 U.S. at 58 ("At the preliminary injunction stage, then, the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing."). Further, Collective Plaintiffs concede in their objections that "[p]recedent requires only a *clear showing* that the Bookstore is *likely* to establish a credible threat of enforcement." *Committee of Five*, ECF. No. 95 at 11; *Doxa*, ECF No. 57 at 11 (first emphasis added). Thus, Collective Plaintiffs admit the Recommendation was correct in applying the "clear showing" standard. However, Collective Plaintiffs insinuate that, because this "is not supposed to be a difficult bar for plaintiffs to clear," they must have surpassed it. *Committee of Five*, ECF. No. 95 at 11; *Doxa*, ECF No. 57 at 11 (citing *Chiles v. Salazar*, 116 F.4th 1178, 1198 (10th Cir. 2024)). The dispute lies in the result of the analysis, which the Court turns to next.

### B. Credible Threat of Enforcement

Collective Plaintiffs assert they have standing, because they each face a credible threat of enforcement. *Committee of Five*, ECF No. 95 at 11; *Doxa*, ECF No. 57 at 11. Preliminarily, Plaintiff alleges the Recommendation disregards Tenth Circuit precedent where plaintiffs were found to have standing even with past enforcement of a statute. *Committee of Five*, ECF No. 95 at 11; *Doxa*, ECF No. 57 at 11 (citing *303 Creative LLC*

16

*v. Elenis*, 6 F.4th 1160, 1173 (10th Cir. 2021), *rev'd*, 600 U.S. 570 (2023); *Chiles*, 116 F.4th at 1198). Although Plaintiff does not discuss how this precedent applies to the instant case, the Court finds them distinguishable.

Shortly before entering this Order on March 31, 2026, the Supreme Court issued its opinion on *Chiles*, reversing the Tenth Circuit's judgment. *Chiles v. Salazar*, No. 24-539, 2026 WL 872307 (U.S. Mar. 31, 2026). The Supreme Court agreed with both the district court and the Tenth Circuit determination that "Ms. Chiles had Article III standing to pursue her as-applied pre-enforcement challenge." *Id.* at *5. "Ms. Chiles had alleged a 'credible threat' that the State would enforce its law against her if she continued speaking as she had in the past and wished to do in the future." *Id.* Additionally, "both courts observed, Colorado authorities had refused to disavow bringing enforcement actions against her." *Id.* The circumstances in this case are different.[2] As described above, Collective Plaintiffs' intended conduct—to refer to individuals using pronouns, honorifics, or titles that are consistent with that person's biological sex—in and of itself does not violate CADA's public accommodations statute. The plain language of the statute requires denial of "the full and equal enjoyment of the goods [or] services" of each public accommodation. Colo. Rev. Stat. § 24-34-601. Collective Plaintiffs have not alleged such denial of goods or services. In fact, Born Again Used Book states it will "happily sell its products to anyone." Therefore, Collective Plaintiffs' intended conduct does not appear on its face to violate CADA or present a credible threat of enforcement. And, for the

---

[2] The Court also notes that the *303 Creative* is distinguishable, because it was decided at the summary judgment stage on the merits. *303 Creative LLC*, 6 F.4th at 1190, The instant case has not yet reached the merits.

reasons stated below, Collective Plaintiffs have failed to demonstrate the elements of credible threat of enforcement to justify pre-enforcement injunctive relief.

### 1. Disavowal of Future Enforcement

Collective Plaintiffs reject the Recommendation's finding that Director Sullivan's testimony "operates like a disavowal." *Committee of Five*, ECF No. 95 at 12; *Doxa*, ECF No. 57 at 12. Collective Plaintiffs suggest that, because it declines to use pronouns in *every* situation, it "risks violating Colorado's supposedly fact-intensive and obscure inquiry." *Committee of Five*, ECF No. 95 at 12; *Doxa*, ECF No. 57 at 12. Relying on *Scott v. Allen*, they contend that "Colorado's claim that enforcement under CADA depends on the facts just confirms the enforcement threat." *Committee of Five*, ECF No. 95 at 13; *Doxa*, ECF No. 57 at 13. But in *Scott v. Allen*, "at least one professional association believe[d] that Scott violated the statute, and the District Attorney himself refuse[d] to disavow that Scott's intended actions do not fall under the statute." 153 F.4th 1088, 1097 (10th Cir. 2025). Additionally, the District Attorney did not disavow the possibility of a future prosecution. *Id.*

Here, the specific facts at issue are important. Again, Collective Plaintiffs have represented they will not deny their goods or services to anyone. Therefore, there is no violation of the statute on its face. Further, while Collective Plaintiffs eschew the Division's explanation of the process it uses to determine whether a prosecution under this statute would be pursued, such explanation sheds light on the likelihood of prosecution and the credible threat of prosecution—an issue on which Collective Plaintiffs bear the burden. According to the Director, a CADA violation would have to satisfy three steps: (1) "the

public accommodation must intentionally treat a customer or prospective customer differently based on their protected class status"; (2) "the customer must, as a subjective matter, experience the conduct at issue to be a denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the place of public accommodation because of the customer's gender identity;" and (3) "the Division would have to determine that a reasonable person, under the circumstances, would experience the conduct to be a denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation based on their gender identity." *Committee of Five*, ECF No. 84-1 at 7; *Doxa*, ECF No. 46-1 at 7. Defendants have provided sworn declarations, deposition testimony, and discovery responses explaining that Collective Plaintiffs' intended misgendering and deadnaming alone is not conduct that violates CADA *per se*—the conduct must rise to the level of harassment to be a violation. *Doxa*, ECF No. 59 at 7-8; *see Doxa*, ECF No. 46-1 at 8 (Defendants' interrogatory response describing conduct that would violate CADA: "Without any facts regarding the circumstances surrounding the hypothetical complained conduct, the most comparative conduct described by the interrogatory would be harassment."). The Division has not received any complaints against a place of public accommodation regarding its policy or publication on misgendering or deadnaming. *Committee of Five*, ECF No. 84-1 at 555; *Doxa*, ECF No. 46-1 at 555. Even if a member of the public were to file a complaint, it would ultimately be up to the Division to determine whether an enforcement action would proceed. Again, the Director has provided evidence that such an action would not be taken under the

circumstances presented by Collective Plaintiffs. While it is true the Defendants have not completely disavowed any possible prosecution of Collective Plaintiffs under any circumstances, this is not required. Rather Collective Plaintiffs must demonstrate a credible threat of prosecution. has At this stage, they have not offered a reasonable basis to infer they face a credible threat of prosecution—which, again, is their burden. Thus, the Court agrees with the Recommendation on this factor.

### 2. Past Enforcement Against the Same Conduct

Plaintiff contends that "[e]nforcing CADA against similar speech is enough" to satisfy the second credible threat of enforcement. *Committee of Five*, ECF No. 95 at 13; *Doxa*, ECF No. 57 at 13. Collective Plaintiffs offer two examples where the Division found probable cause "based solely on misgendering." *Committee of Five*, ECF No. 95 at 13-14; *Doxa*, ECF No. 57 at 13-14. According to Collective Plaintiffs, these examples and the fact that they challenge "a newly enacted law" is enough to prove this factor.

Defendants clarify that the examples introduced by Collective Plaintiffs were circumstances in which there was "a denial of full and equal enjoyment of goods and services." *Committee of Five*, ECF No. 97 at 10; *Doxa*, ECF No. 59 at 10. The first example involved a complainant utilizing the respondent's services to donate blood. *Doxa*, ECF No. 47 at 142. The complainant identified as "male" when creating a donor profile but completed her transition from male to female over a decade later. *Id.* After her transition, the complainant sought the respondent's blood donation services and filled out a new profile, self identifying as "female." *Id.* at 143. The respondent merged the accounts but "refused to change the [c]omplainant's gender to female in the system." *Id.* In the

second example, the charging party and her friend were patrons of the respondent, a cocktail lounge. *Id.* at 23. The charging party, who identifies as female/transgender, and her friend went to the women's bathroom. *Id.* at 22-23. When they exited the bathroom, an off-duty police officer employed by the respondent was waiting to speak with them. *Id.* at 23-24. The officer "told her if they were going to use the women's bathroom again then they were not permitted to re-enter the establishment. *Id.* at 24.

As described above, a violation of CADA requires a denial of the full and equal enjoyment of the goods or services offered by the public accommodation because of the individual's gender identity. In the blood bank case, the complainant "was not provided equal treatment to donors outside her protected class, because she was not allowed to self-identify her gender in her donor profile." *Id.* at 143. In the other example, the complainant was told if she and her friend were "going to use the women's bathroom again then they were not permitted to re-enter the establishment." *Id.* at 24. In both cases, the complainants were denied the services of the public accommodations because of their gender identity.

Collective Plaintiffs have expressed that they intend to offer their goods or services to everyone. Additionally, *Darren Patterson Christian Academy* and *St. Mary* do not involve the conduct of misnaming and deadnaming. *Darren Patterson Christian Academy*, 699 F.Supp.3d at 1173 (addressing the non-discrimination rules of the "Universal Preschool Program" as applied to hiring ministers); *see also St. Mary Cath. Par. in Littleton v. Roy*, 736 F. Supp. 3d 956 (D. Colo. 2024) (also addressing the "Universal

21

Preschool Program). Thus, Collective Plaintiffs have not satisfied their burden of demonstrating past enforcement against the same conduct.

### 3. Authority to Initiate Charges

Collective Plaintiffs also object to the Recommendation's conclusion that an individual's ability to file a charge against them weighs against a clear threat of enforcement. *Committee of Five*, ECF No. 95 at 15; *Doxa*, ECF No. 57 at 15. Collective Plaintiffs rely on *303 Creative*, arguing that CADA's complaint process itself creates a credible threat of enforcement. *Id.* Indeed, the Supreme Court stated that "anyone in the State may file a complaint . . . and initiate a potentially burdensome administrative hearing process." *303 Creative*, 600 U.S. at 583. However, *303 Creative* did not describe the weight of each factor in the clear threat of enforcement analysis. In this case, Magistrate Judge Braswell clearly explained that the weight of the other two factors are sufficient to find that Collective Plaintiffs have not demonstrated they face a credible threat of enforcement. *Doxa*, ECF No. 54 at 90:21-25. Collective Plaintiffs do not dispute this.

Thus, the Court finds that Collective Plaintiffs have not met their burden in proving clear threat of enforcement to establish standing.

### C. Remaining Preliminary Injunction Factors

Finally, Collective Plaintiffs object to the Recommendation's finding that the remaining preliminary injunction factors weigh against preliminary relief. *Committee of Five*, ECF No. 95 at 15-16; *Doxa*, ECF No. 57 at 15-16. Collective Plaintiffs asserts that (1) their injuries are irreparable because they face a credible threat of enforcement by Colorado and (2) "it is always in the public interest to prevent the violation of a party's

constitutional rights." *Committee of Five*, ECF No. 95 at 16; *Doxa*, ECF No. 57 at 16. (citing *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)). As described above, Collective Plaintiffs have not demonstrated a credible threat of enforcement. They also fail to provide evidence of a single complaint or history of enforcement tied to the conduct at issue. Therefore, Collective Plaintiffs have not demonstrated irreparable harm. And, while the Court agrees the public has an interest in protecting an individual's constitutional rights, this alone cannot overcome Collective Plaintiffs' failure to satisfy their burden of demonstrating that the extraordinary relief of pre-enforcement injunction is appropriate.

Accordingly, the Court agrees with the Recommendation and finds that Collective Plaintiffs have not carried their burden to demonstrate pre-enforcement injunctive relief is appropriate. Therefore, their requests for preliminary injunction are denied. The Court notes that, at this stage, it has not reached the merits of these cases. The motions to dismiss (*Committee of Five*, ECF Nos. 69, 70; *Defending Education*, ECF Nos. 81, 82; *Doxa*, ECF Nos. 33, 34) are fully briefed and the Court orders the parties to set a status conference with Magistrate Judge Braswell as soon as possible to address the motions to dismiss and the relief requested thereunder.

## V.     CONCLUSION

For the reasons set forth above, the Court ORDERS:

1. Collective Plaintiffs' Objections to the Recommendation (*Defending Education*, ECF No. 110; *Committee of Five*, ECF No. 95; *Doxa*, ECF No. 57) are OVERRULED;

2.  The Recommendation (*Defending Education*, ECF No. 102; *Committee of Five*, ECF No. 87; *Doxa*, ECF No. 49) is ACCEPTED AND ADOPTED;

3.  Collective Plaintiffs' Motions for Preliminary Injunction (*Defending Education*, ECF No. 27; *Committee of Five*, ECF No. 15; *Doxa*, ECF No. 4) are DENIED; and

4.  The parties are ORDERED to set a status conference with Magistrate Judge Braswell to address the pending motions to dismiss (*Defending Education*, ECF Nos. 81, 82; *Committee of Five*, ECF Nos. 69, 70; *Doxa*, ECF Nos. 33, 34) and the relief requested thereunder.

DATED:  March 31, 2026

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge

24